Frances LOVE, Appellant (Claimant Below),

v.

HERITAGE HOUSE CONVALESCENT CENTER, Appellee,

and

Review Board of the Indiana Employment Security Division, Appellee.

No. 2–1081 A 361.

Court of Appeals of Indiana, Second District.

Jan. 24, 1983.

Franklin W. Arkenberg, III, Griggs & Arkenberg, Franklin, for appellant.

David T. O'Malia, Stark, West & Smith, Indianapolis, for appellee Heritage House Convalescent Center.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee Review Bd. of the Indiana Employment Sec. Div.

SULLIVAN, Judge.

Frances M. Love (Love) appeals the decision of the Review Board of the Indiana Employment Security Division affirming a referee's denial of unemployment benefits because she had been discharged for just cause from her employment with the Heritage House Convalescent Center. We affirm.

In deciding that appellant was ineligible for benefits under I.C. 22–4–15–1 (Burns Code Supp.1982),[1] the Board adopted the

---

1. "(a) With respect to benefit periods, including extended benefit periods, established on and after July 3, 1977, and before July 6, 1980, an individual who has voluntarily left his employment without good cause in connection with the work or who was discharged from his employment for just cause is ineligible for waiting period or benefit rights ....

(e) 'Discharge for just cause' as used in this section is defined to include but not be limited to:

....

(2) Knowing violation of a reasonable and uniformly enforced rule of an employer;
(3) Unsatisfactory attendance, if the individual cannot show good cause for absences or

following findings and conclusions which the appeals referee entered after having conducted an evidentiary hearing:

"FINDINGS OF FACT: The claimant worked for this employer from June 9, 1980 until April 6, 1981. The claimant was last employed in a position of nursing assistant in the intermediate care unit at the rate of pay of $3.50 per hour. On April 6, 1981 the claimant was discharged from her employment for alleged unsatisfactory attendance.

The claimant was absent from her employment due to either her own personal illness or the illness of a close family member on twenty days from September 9, 1980 until the date of the claimant's discharge. In addition, the claimant was excused for her absence on December 25, 1980 because of excessive snow.

The claimant was tardy no more than three minutes in reporting to work on thirteen days. The claimant was tardy on those days due to road conditions from her residence to the facility of the employer. The claimant is required to travel at least part of the distance to work on a gravel road and on township roads.

The employer has a policy which provides that if an employee is absent for a total of six days in any given six-month period, a counselling report will be completed by the employee's immediate supervisor without regard to the reason for the absences. Following such a counselling report, any additional unexcused absences may be cause for termination and the supervisor may determine that any additional absences, regardless of the reason for the absence, may be cause for termination.

An employee is considered tardy anytime the employee clocks in for work after the starting time of the shift. The employer's policy further provides that more than ten tardies in a twelve-month period may be cause for termination.

The claimant received a copy of the employer's attendance policy at the time she began work for this employer. The claimant was counselled regarding her attendance on August 1, 1980, February 3, 1981, and March 8, 1981. On March 30, 1981 the claimant was specifically advised that any absence or tardiness before May 1, 1981 would result in her termination. The claimant was absent from her employment on April 5, 1981. On April 6, 1981 the claimant was discharged from her employment because she incurred more than six absences in a six-month period (regardless of the reason for the absences) and because she incurred more than ten tardies in a twelve-month period.

CONCLUSIONS: An individual who is discharged for just cause is ineligible for benefit rights as provided in Chapter 15-1 of the Indiana Employment Act. The term 'discharged for just cause' is defined by the Act to include unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness and knowing violation of a reasonable and uniformly enforced rule of an employer.

In this case, the employer's rule regarding attendance subjects an employee to discharge regardless of the reason for the absences. An employer's rule which subjects an employee to discharge for absences without regard to the reason for those absences is not a 'reasonable rule' for purposes of disqualification from unemployment benefits under Chapter 15-1. In this case, although the claimant may have violated the rule of the employer regarding attendance, the employer's rule regarding attendance is not a reasonable one under Chapter 15-1 of the Act. As a result, the referee concludes that the claimant did not knowingly violate a reasonable and uniformly enforced rule of the employer.

The legislature has specifically provided that unsatisfactory attendance constitutes just cause for discharge, if the individual cannot show good cause for the absences or tardiness. Illness of the tardiness; ..." I.C. 22-4-15-1 (Burns Code Supp.1982).

claimant or illness of a close family member of the claimant constitutes good cause for absences. In this case, all of the absences of the claimant were for good cause.

It is the responsibility of the employee to arrive at work on time. General road conditions do not constitute good cause for chronic tardiness. Since the claimant was tardy on thirteen different occasions because of general road conditions, the referee concludes that the claimant did not have good cause for such tardiness. As a result, the referee concludes that the claimant was discharged for just cause within the meaning of Chapter 15–1 of the Indiana Employment Security Act." Record at 83–84.

In her assignment of errors, appellant challenged the Board's decision as being both contrary to law and unsupported by the evidence. Framed in this manner, the challenge triggers the two-tiered standard of review contemplated by I.C. 22–4–17–12 (Burns Code Ed.1974). Under this standard, the Board's "finding of ultimate fact" is its conclusion, whereas its "findings of basic facts" are the evidentiary findings on which this conclusion is premised.

"At the first level of review, we examine only the relationship between the premises and the conclusion and ask if the Board's deduction is 'reasonable.' (Citation omitted.) The inquiry at this first level of review may be termed a 'question of law.' (Citation omitted.)

At the second level of review, we inquire into the nexus between the premises or findings of basic facts and the evidence presented to determine if the evidence justified these findings. In this inquiry we are obliged to give substantial deference to the agency's findings, inasmuch as the agency, and not this court, has the opportunity to hear and see the witnesses and the exhibits. Thus, in reviewing the sufficiency of the evidence to sustain the findings of basic facts, we are not at liberty to reweigh the evidence ...." *Gold Bond Building Products Division National Gypsum Co., Shoals Plant v. Review Board of the Indiana Employment Security Division* (2d Dist.1976) 169 Ind.App. 478, 349 N.E.2d 258, 263.

*Accord, Forster v. Review Board of Indiana Employment Security Division* (4th Dist.1981) Ind.App., 420 N.E.2d 1287, 1290.

We shall first determine whether there was a nexus between the Board's findings of basic facts and the evidence adduced. In reviewing the evidence, we consider only that evidence and the reasonable inferences therefrom most favorable to the Board's decision. We are free to disturb this decision only if reasonable persons would be bound to reach a different conclusion on the evidence in the record. *Ervin v. Review Board of the Indiana Employment Security Division* (3d Dist. 1977) 173 Ind.App. 592, 364 N.E.2d 1189, 1193.

While the initial burden of proving that the employee has been discharged for just cause is upon the employer, once the employer establishes a prima facie case, the employee must then introduce evidence in refutation. *Forster v. Review Board of the Indiana Employment Security Division, supra,* 420 N.E.2d at 1291. Jan Pickerell, the director of nursing at the Heritage House Convalescent Care Center, testified that appellant had been employed as a nursing assistant from June 9, 1980 to April 6, 1981. Claimant had received a copy of the employer's attendance policy when she began her employment. According to this policy, an employee who accumulates within a 6-month period, 6 tardies, or 3 unexcused, or a total of 6 absences, regardless of whether or not any or all of these 6 are excused, will be counselled by the immediate supervisor. Any additional absences, or more than 10 tardies in one year, may be cause for termination.

Within 6 months before being discharged, claimant had been absent due to her own or her husband's illness for 20 days and had been late in reporting to work on 13 days. In her December, 1980 evaluation report, claimant was advised that although she was a good worker, she needed

to improve on her punctuality. On March 9, she was suspended for one day because she accumulated numerous tardies within a 2-month period. According to a counseling report she received on March 30, 1981, claimant continued to report to work late on five other occasions even after the December, 1980 evaluation, the February 3 counseling report, and the March 9 suspension.

In arguing that there was good cause for her tardiness, appellant claimed that she experienced difficulty, due to weather-related road conditions, in maneuvering her car on the winding gravel road from her home to the convalescent center, causing her to be tardy on several occasions. However, when the referee asked whether her tardiness on March 29, which apparently necessitated the counselling session of March 30, was due to the same road conditions, claimant responded in the negative. Claimant did not offer other evidence to show that her tardiness was justified by good cause. In light of the evidence, we sustain the Board's finding that claimant was chronically tardy and that such tardiness was not justified by good cause.

We next address the issue whether the Board's finding of ultimate fact or rather, its conclusion, that claimant was properly denied unemployment benefits because she had been discharged for just cause, was reasonable. On March 30, 1981, appellant was warned that if she were either absent or tardy once more before May 1, she would be automatically dismissed. She was absent on April 5 due to her husband's illness. Although this, along with her prior absences, were considered by the employer to be justified, claimant was discharged on April 6.

■ In view of the expressed legislative intent that the Employment Security Act was designed to benefit persons unemployed through no fault of their own, I.C. 22–4–1–1 (Burns Code Ed.1974); *see also White v. Review Board of the Indiana Employment Security Division* (2d Dist. 1972) 151 Ind.App. 426, 280 N.E.2d 64, 67, we concur with the Board's assessment of

the employer's attendance rule. A rule which subjects an employee to discharge for excused, as well as unexcused absences, is unreasonable under I.C. 22–4–15–1(e)(2). Given the history and purpose of our law, the violation of such a rule may not disqualify an employee from unemployment compensation if the absences are excused. *See Kirk v. Cole* (1982) W.Va., 288 S.E.2d 547, 550; *Atlantic Richfield Co. v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review* (1982) 65 Pa.Cmwlth. 65, 441 A.2d 516, 517. Thus, under this construction of the employer's rule, the fact that Appellant had accumulated enough absences, regardless of whether they were excused or unexcused, so as to make her a candidate for dismissal under the employer's attendance policy, does not serve as a disqualification for unemployment benefits.

■ However, Ms. Pickerell testified that claimant's absences were not the sole cause of her discharge. In addition to her numerous absences, claimant's chronic tardiness, her poor attendance record as a whole, and her overall lack of dependability led ultimately to her termination. Thus, although her excused absences alone would not have constituted just cause for her discharge, her frequent unexcused tardiness coupled with apparent disregard of the employer's warnings justified her termination. Claimant argues that since she had not been tardy after the March 30 warning, but was instead absent for good cause, the employer did not have just cause to fire her on April 6. We note that claimant had been tardy a total of 13 times before the March 30 warning, that she had received an evaluation report on December 1980 reprimanding her for her tardiness, and that she had been tardy 5 times even after a one-day suspension in March. That the employer exercised great tolerance in allowing her to continue working despite her unsatisfactory attendance "does not *ipso facto* negate the causal relationship between her numerous late arrivals and her discharge." *See Cornell v. Review Board of the Indiana Employment Secur-*

*ity Division* (3d Dist.1979) 179 Ind.App. 17, 383 N.E.2d 1102, 1106. To conclude otherwise would be to penalize the employer for having given claimant ample opportunity to rectify her behavior. Under the facts before us, we cannot say that reasonable minds would be compelled to reach a conclusion other than that reached by the Board. Moreover, we are reminded that the Employment Security Act was intended to protect only those who are discharged "through no fault of their own." We do not deem claimant to fall within that class of persons which the Act was designed to benefit. The Board's determination that appellant was discharged for just cause is therefore affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.